AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>(1) THE PREMISES LOCATED 14310 W MAUNA LOA LANE, SURPRISE, ARIZONA 85379<br>(2) THE PERSON OF KIERA PRACHT AND ANY BAGS OR BACKPACKS IN HER POSSESSION, AND<br>(3) THE PERSON OF DAVID PRACHT AND ANY BAGS OR BACKPACKS IN HIS POSSESSION | Case No. 24-3279 MB<br><br>(Filed Under Seal) |

**ELECTRONICALLY SUBMITTED SEARCH AND SEIZURE WARRANT**

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before August 18, 2024 *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for  30  days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: August 5, 2024 @ 1p

*Judge's signature:* M Morrissey

City and state: <u>Phoenix, Arizona</u>

Honorable MICHAEL T. MORRISSEY, U.S. Magistrate Judge
*Printed name and title*

# RETURN

| Case No.: | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

# CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

1. The property to be searched is the premises, curtilage, and outbuildings of 14310 West Mauna Loa Lane, Surprise, Arizona 85379 (hereinafter, the "Subject Premises"). The Subject Premises is a single-story family residence that faces South. The Subject Premises sits on the corner of W Mauna Loa Lane and N 143rd Avenue. The Subject Premises is constructed of stucco that is beige in color. The Subject Premises has a two-car entry garage with four pillars along the front of the residence. Windows on the Subject Premises are observed on the front, right, and left sides of the residence. The Subject Premises has a dark in color, screened security door affixed to the front door. The Subject Premises has no visible doorbell camera, however, affixed to the gate on the left side of the residence is a sign that denotes "Security Cameras in Use."



1



2. The person of KIERA PRACHT (date of birth March 1, 1971), a White female approximately 5 feet 3 inches tall and approximately 53 years old ("KIERA" or "the PERSON"), as pictured below, and any bags or backpacks in her possession.



3

3. The person of DAVID PRACHT (date of birth August 10, 1969), a White male approximately 5 feet 10 inches tall and approximately 55 years old ("DAVID" or the "PERSON"), as pictured below, and any bags or backpacks in his possession.



The execution of the search of the PERSONS and of the PREMISES described above is limited in scope to a search for any cell phone(s) or smart phone(s) that the PRACHTS carried and used while unlawfully entering and remaining on the Capitol grounds, and other cell phones or smart phones which are now owned, used, or controlled by the PRACHTS ("the TARGET DEVICES") and is only to be executed to the extent necessary to seize the TARGET DEVICES. The TARGET DEVICES, in turn, will be searched for the evidence described further in Attachment B.

4

## **ATTACHMENT B**

*Property to be seized*

1.      The items, information, and data to be seized from the TARGET DEVICES (as further described in Attachment A) are fruits, evidence, information relating to, contraband, or instrumentalities, in whatever form and however stored, relating to the violation of 18 U.S.C. § 1752(a)(1) (entering or remaining in restricted buildings or grounds); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds); 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct in the Capitol Buildings); and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol Building) (the "TARGET OFFENSES") as described in the search warrant affidavit, including, but not limited to call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data that contain, constitute evidence of, document, establish, identify, or reflect:

   a. Establishing or documenting the commission of the TARGET OFFENSES;

   b. Identifying locations where the individual committed the TARGET OFFENSES, traveled to before and after the commission of the TARGET OFFENSES, and in preparation for the TARGET OFFENSES;

   c. Reflecting the ownership and use of the item identified in Attachment A by the individual committing the TARGET OFFENSES;

   d. Documenting meetings and communications between individuals committing one or more of the TARGET OFFENSES;

e. Reflecting communications between the individual committing one or more of the TARGET OFFENSES and other individuals, discussing the commission of one or more of the TARGET OFFENSES;

f. Reflecting communications between the individual committing one or more of the TARGET OFFENSES and other individuals who may have assisted or provided support in the commission of one or more of the TARGET OFFENSES;

g. Containing photographs or video that would constitute evidence of a violation of the TARGET OFFENSE;

h. Evidence of any planning or preparation to commit the TARGET OFFENSES;

i. Evidence concerning efforts after the fact to conceal evidence of those offenses, or to flee prosecution for the same;

j. Evidence of communication devices used in relation to the TARGET OFFENSES;

k. Evidence of the state of mind of the subject and/or other co-conspirators, e.g., intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation; and

l. Evidence concerning the identity of persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the unlawful actors about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

m. Evidence concerning planning to unlawfully enter the U.S. Capitol, including any maps or diagrams of the building or its internal offices;

n. Evidence concerning unlawful entry into the U.S. Capitol, including any property of the U.S. Capitol;

o. Evidence concerning the official proceeding that was to take place at Congress on January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

p. Evidence concerning efforts to obstruct, impede, or disrupt the official proceeding that was to take place at Congress on January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

q. Evidence concerning the breach and unlawful entry of the United States Capitol on January 6, 2021;

r. Evidence concerning the riot and/or civil disorder at the United States Capitol on January 6, 2021;

s. Evidence concerning efforts to impede federal officers/agents in the performance of their duties the United States Capitol on January 6, 2021;

t. Evidence concerning awareness that the U.S. Capitol was closed to the public on January 6, 2021;

u. Evidence of the subject's presence at the U.S. Capitol on or around January 6, 2021;

v. Evidence concerning the results of, challenges to, or questions about the legitimacy of the 2020 Presidential Election;

w. Evidence regarding travel to Washington, D.C. in or around January 2021, motive and intent for travel to Washington, D.C. in or around January 2021, the planning of travel to and activity in Washington, D.C. on or about January 6, 2021, research about the U.S. Capitol, and mode of travel, travel expenses, and travel logistics on or about January 6, 2021.

x. Evidence regarding the riot at the U.S. Capitol on January 6, 2021;

y. Records and information related to the email addresses, phone numbers, social media, account identifiers used by perpetrators, aiders and abettors, co-conspirators, and accessories after the fact concerning the TARGET OFFENSE;

z. Evidence of who used, owned, or controlled the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, and correspondence;

aa. Evidence of software, or the lack thereof, that would allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

bb. Evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence;

cc. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s);

dd. Evidence of the times the Device(s) was used;

ee. Passwords, encryption keys, and other access devices that may be necessary to access the Device(s);

ff. Documentation and manuals that may be necessary to access the Device(s) or to conduct a forensic examination of the Device(s);

gg. Records of or information about Internet Protocol addresses used by the Device(s); and

hh. Records of or information about the Device(s)'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2. During the execution of the search of the PREMISES described in Attachment A, law enforcement personnel are also specifically authorized to obtain from the PRACHTS (but not any other individuals present at the PREMISES at the time of execution of the warrant) the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock any of the TARGET DEVICE(S) requiring such biometric access subject to seizure pursuant to this warrant for which law enforcement has reasonable suspicion that the aforementioned person(s)' physical biometric characteristics will unlock the TARGET DEVICE(S), to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition of:

    (a)    any of the TARGET DEVICE(S) found at the PREMISES,

    (b)    where the TARGET DEVICE(S) are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments, for the purpose of attempting to unlock the Device(s)'s security features in order to search the contents as authorized by this warrant.

3. While attempting to unlock the device by use of the compelled display of biometric characteristics pursuant to this warrant, law enforcement is not authorized to demand that the aforementioned person(s) state or otherwise provide the password or identify the specific biometric characteristics (including the unique finger(s) or other physical features), that may be used to unlock or access the Device(s). Nor does the warrant authorize law enforcement to use the fact that the warrant allows law enforcement to obtain the display of any biometric characteristics to compel the aforementioned person(s) to state or otherwise provide that information. However, the voluntary disclosure of such information by the aforementioned person(s) is permitted. To avoid confusion on that point, if agents in executing the warrant ask any of the aforementioned person(s) for the password to any Device(s), or to identify which biometric characteristic (including the unique finger(s) or other physical features) unlocks any Device(s), the agents will not state or otherwise imply that the warrant requires the person to provide such information, and will make clear that providing any such information is voluntary and that the person is free to refuse the request.